**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SANDRA L. GOOD,** | : | **CIVIL ACTION NO. 1:06-CV-1736** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF STEELTON,** | : | |
| **DENNIS C. HEEFNER,** | : | |
| **SYLVIA STONER, JOHN TRISH**, | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

*Pro se* plaintiff Sandra L. Good ("Good") brings this civil rights action

pursuant to 42 U.S.C. § 1983 against the following defendants: (1) the Borough of

Steelton, (2) John Trish, (3) Sylvia Stoner, and (4) Dennis C. Heefner.  Good seeks to

hold defendants liable for violating her Fourteenth Amendment rights to

substantive and procedural due process and equal protection, and engaging in

behavior that constituted a violation of her Fourth Amendment rights to be free

from unreasonable searches and seizures.  Presently before the court are two

motions: (1) defendants' motion to dismiss plaintiff's second amended complaint

(Doc. 36) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (2) a

motion for leave to supplement the second amended complaint, filed by Good.[1]  For

the reasons that follow, the motion to dismiss will be granted, and Good's request

---

[1] In earlier briefing, the court denied defendant Trish's motion to dismiss
Good's equal protection claim against Trish in his individual capacity.  (Doc. 30.)
That claim remains cognizable and is not currently before the court.

for leave to supplement her complaint will be granted in part and denied in part.

Good will be granted leave to file a third amended complaint.

## I.    __Statement of Facts__[2]

Good owns a residence located within the Borough of Steelton.  (Doc. 35 ¶ 1.)

The dispute in this case centers around the efforts of the Steelton Borough Code

Enforcement Office to bring Good's property into compliance with local ordinances.

Such efforts began on July 11, 2006, when defendant John Trish ("Trish"), a

property maintenance officer for Steelton Borough, sent Good a letter informing

her that her sidewalk was in "disrepair" and violated "the provisions of the 2003

International Property Maintenance Code and/or Borough of Steelton's Codified

Ordinances."  (Doc. 35, Ex. A.)  The letter advised that Good must repair her

sidewalk by August 12, 2006 or face a citation.  (Id.)  The letter further informed

Good of her right to request a hearing regarding the alleged violation by filing a

---

[2] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint and in the public records provided by defendants.  See infra Part II.  The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

written petition within ten days of the letter's receipt.[3] (Id.) Prior to the expiration of this ten day period, Good contacted Trish's office in order to inquire about the standards governing sidewalk maintenance. (Doc. 35 ¶ 4a.) Good was unable to reach Trish, but instead spoke to defendant Sylvia Stoner ("Stoner"), who informed Good that Trish was ill and would return her phone call within the ten day appeals period. (Id.) When Good did not hear from Trish for several days, she called Trish's office a second time, at which point Stoner again instructed Good to await Trish's return call. (Id. ¶ 4b.) The ten day appeals period lapsed prior to Trish's return call.

In early August, Trish contacted Good. He advised Good that her brick sidewalk would have to be replaced with concrete to comply with the ordinance. (Id. ¶ 5; Doc. 6, Ex. B.) In light of the scope of this project, Trish granted Good an extension of time until September 12, 2006, in which to complete the work. (Doc. 6, Ex. B.) Good then commenced to replace her sidewalk. (Doc. 35 ¶ 13.)

While Good's sidewalk project was in progress, defendant Dennis C. Heefner ("Heefner"), a member of the Steelton Borough Council, contacted Good by

---

[3] With respect to Good's right to a hearing, the July 11, 2006 letter states:

It is your right to request and be granted a hearing on this matter before the Code Hearing Board provided that you file in the Borough Code Office a written petition requesting such a hearing and containing a statement of the grounds therefore [sic] within ten (10) days after the notice is served.

(Doc. 35, Ex. A.)

telephone and suggested that she place caution tape around the work site.  (Id. ¶ 14.)

Good immediately complied.  (Id.)  On August 31, 2006, with the work on her

sidewalk only partially complete, Stoner contacted Good by telephone and advised

her to remove the caution tape because it was creating a safety hazard for

schoolchildren who were forced to walk in the street to pass her home.  (Id. ¶ 15.)

Good gradually became aware that no other sidewalk replacement projects were

being conducted on properties in Steelton Borough.[4]  (Id. ¶ 16.)  She alleges that at

least nine properties in her immediate neighborhood, and perhaps 100 more in the

entire borough, have brick sidewalks that are in a state of "disrepair."  (Doc. 6 ¶ 8.)

None of these property owners were directed to comply with a September deadline

for sidewalk replacement.[5]  (Id.)

        At some point, Good abandoned work on the sidewalk project.  Good now

alleges that she is "burdened with the need to replace her sidewalk and maintain a

safe working site, and move storage bricks out of her side yard."  (Doc 35 ¶ 19.)

Additionally, Good complains that she was forced to "unnecessarily pa[y] labor to . . .

remove bricks."  (Id.)  Good asks the court to order defendants to clean up the work

---

        [4]  The Borough disputes this contention, claiming that at least four property owners on Good's block were notified about deficiencies in their sidewalks.  (Doc. 15 at 5 n.1.)

        [5]  Good requested an additional extension of time in which to complete the sidewalk project, which the Borough allegedly denied.  (Doc. 6 ¶ 10.)  The Borough counters that it granted Good's request, providing her until November 30, 2006 to complete the sidewalk project.  (Doc. 15 at 5 n.2.)

site, repair her sidewalk at their own expense, and pay $50,000 in punitive damages. (<u>Id.</u> at 15.)

On September 5, 2006, Good initiated the instant action, alleging that defendants violated her Fourteenth Amendment rights by: (1) depriving her of property without due process, and (2) holding her to different standards of "adherence to statutes and ordinances" than her neighbors. (Doc. 1; Doc. 6.) Defendants filed motions to dismiss on November 20, 2006, alleging that Good's complaint failed to state cognizable Fourteenth Amendment claims against them. (Docs. 12, 14.) On September 13, 2007, this court denied defendants' motion with respect to Good's equal protection claim against John Trish in his individual capacity. (Doc. 30.) This court granted defendants' motions, however, with respect to all other claims, but afforded Good leave to amend. (<u>Id.</u>)

Good filed a second amended complaint on November 26, 2007, alleging that the Borough's appeals policy unconstitutionally denied her due process and equal protection of the laws.[6] (Doc. 35.) On December 10, 2007, defendants filed a motion to dismiss Good's second amended complaint, alleging that Good's Fourteenth

---

[6] Good's complaint also included a conclusory statement alleging that defendants' actions constituted First Amendment violations. (Doc. 35 ¶ 1.) After defendants briefed the First Amendment retaliation issue in their motion to dismiss, however, Good disclaimed the notion that improper retaliation constituted a portion of her claim. (<u>See</u> Doc. 41 at 2-3.) The court will accept Good's characterization of her claim and, consequently, no First Amendment issues will be addressed.

Amendment claims were not cognizable.  (Doc. 36.)  The motion has been fully briefed and is ripe for disposition.

While the parties were awaiting the court's ruling on the instant motion to dismiss, Good sought leave to amend her complaint a third time, supplementing her Fourteenth Amendment claims with alleged Fourth Amendment violations that occurred after Good initiated this lawsuit.  (Doc. 53.)  Two separate incidents form the basis of Good's proposed supplemental cause of action.  On February 14, 2008, Trish took multiple photographs of Good's residence.  (Id. ¶ 1.)  As he was doing so, he saw Good's daughter and three grandchildren and allegedly began chasing them. (Id.)  Good claims that during the pursuit, Trish took several photographs of the children and, despite a written request that the photographs be returned, Good maintains that they allegedly remain in Trish's possession.  (Id.)

Two months later, on April 15, 2008, Stoner and four other individuals purportedly entered an efficiency apartment located at 187 South Front Street, in Steelton.  (Id. ¶ 2.)  At the time of the entry, Good was leasing the efficiency.  (Id.) Good was not present when this incident occurred and claims that Stoner's entry of the apartment was unannounced and without a warrant.  (Id.)  Subsequently, Good discovered that "highly personal items on her bedtable had been ransacked" and that several "personal legal papers" were missing.  (Id. ¶ 3.)

On April 16, 2008, Good requested leave to supplement her complaint in light of the alleged Fourth Amendment violations.  (Doc. 52.)  On May 19, 2008, defendants opposed the motion, arguing that Good's additional allegations were

without merit, futile, and dilatory. (Doc. 56.) The request for leave to supplement has been fully briefed and is ripe for disposition. Consequently, the court will address both defendant's motion to dismiss plaintiff's second amended complaint, as well as plaintiff's motion for leave to supplement and file a third amended complaint.

## II.   **Motion to Dismiss**

### A.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to "give the defendant notice of what the . . . claim is and the grounds upon which it rests." Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)). The plaintiff

must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Montville Twp. v. Woodmont Builders, LLC, 244 F. App'x 514, 517 (3d Cir. 2007) (quoting Twombly, --- U.S. at ---, 127 S. Ct. at 1969).  Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**B.   Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the action *sub judice*, Good alleges that defendants violated her Fourteenth Amendment rights to due process and equal protection. The court will address the due process claims after first discussing the antecedent requirement of personal involvement.

### 1.   **Personal Involvement**

For a § 1983 claim to survive a motion to dismiss, a plaintiff must allege "that each and every defendant was personally involved in depriving him of his rights." Kirk v. Roan, No. 1:04-CV-1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006); see also Evancho, 423 F.3d at 353 ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing."). A defendant's personal involvement in a constitutional violation may be established via allegations of "personal direction," "actual knowledge and acquiescence," or "direct discrimination." Evancho, 423 F.3d at 353; see also Andrews v. City of Phila.,

895 F.2d 1469, 1478 (3d Cir. 1990).  This court described the specificity required of a

plaintiff's allegations as follows:

> [A]llegations are sufficient to survive a motion to dismiss when they
> name the individuals responsible, the conduct, the time, and the place
> of the incident that deprived a plaintiff of his civil rights.  Conversely,
> alleging a mere hypothesis that an individual defendant had personal
> knowledge or involvement in depriving the plaintiff of his rights is
> insufficient.  Accordingly, a § 1983 complaint must be dismissed when
> it fails to contain even a remote suggestion that a supervisory defendant
> had contemporaneous, personal knowledge of the alleged harm and
> acquiesced in it.

Kirk, 2006 WL 2645154, at *3 (quoting Evancho, 423 F.3d at 353 and Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)) (internal citations omitted).

     In the instant case, Good's constitutional claims are limited to the Borough's

efforts to bring her sidewalk into compliance with local ordinances.[7]  As such, Good

fails to allege that either Heefner or Stoner was personally involved in the alleged

constitutional deprivation.  According to Good's second amended complaint,

Heefner did not become involved in the underlying events until some point in time

after Good had commenced reconstruction efforts on her sidewalk.  In fact, she

admits as much, stating that the bricks in her sidewalk had already been removed

by the time Heefner first contacted her.  (Doc. 41 at 6.)  Thus, Good fails to allege

that Heefner had "contemporaneous, personal knowledge" of the Borough's

decision to enforce its sidewalk ordinance against her or that he played any active

---

     [7] Good also makes two proposed Fourth Amendment claims, but these
allegations concern events temporally distinct from the allegations that gave rise to
this complaint.  The court discusses these Fourth Amendment claims infra.

role in that decision.  See Kirk, 2006 WL 2645154, at *3 (requiring that the accused

government actor be actively involved in the constitutional deprivation, as opposed

to a passive supervisor who simply failed to prevent the injury in the first place).

Rather, Heefner's alleged involvement is limited to directing Good to place caution

tape around her sidewalk and advising Good to seek an extension of time with which

to complete the sidewalk reconstruction.  Such instructions hardly rise to the level

of a constitutional violation.

Similarly, Good's individual capacity claims directed at Stoner also fail for

lack of personal involvement.  According to her complaint, Stoner's role in this

matter was akin to that of a desk clerk answering the office phone in the Code

Enforcement Office.  By Good's own admission, Stoner took Good's messages and

promised to relay them to an authority figure; Good makes no allegation that Stoner

failed to relay those messages.  Furthermore, although Stoner did not provide Good

with information regarding the code appeals process, Good does not allege that

Stoner had such information or the authority to provide it.  As such, the complaint

fails to allege that Stoner was a supervisory defendant with contemporaneous,

personal involvement in the decision to enforce the sidewalk ordinance against

Good.

For the foregoing reasons, the court will dismiss Good's § 1983 claims against

defendants Heefner and Stoner.  However, the court will grant Good leave to amend

her complaint in order to allege sufficient facts to suggest that the defendants were

personally involved in the purported constitutional violations.

11

### 2.    Due Process Claims against the Borough of Steelton

A local government entity may be held liable under § 1983 only if the plaintiff can identify an official policy or custom that caused his or her injury. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). A policy is an official proclamation or edict of a local government entity that results "from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403-04; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews, 895 F.2d at 1480) (citations omitted). A custom may provide the basis for § 1983 liability when the practice is "so permanent and well settled as to virtually constitute law." Beck, 89 F.3d at 971 (quoting Andrews, 895 F.2d at 1480) (citations omitted).

In the instant case, Good advances both facial and as applied challenges to the constitutionality of § 2-15 of the Borough code.[8]  (Doc. 35 ¶¶ 20-23.); see also BOROUGH OF STEELTON, PA., CODE § 2-15 (describing the Borough appeals procedure).  Clearly, the relevant section of the Borough code constitutes a local policy for § 1983 purposes.  As such, the court will address Good's facial challenge first, followed by her as applied claims.

### a.    Facial Challenge

Good alleges that the code section is "unconstitutional on its face because it relies upon the Office of Code Enforcement to monitor itself."  (Doc. 35 ¶ 20.) Additionally, Good argues that the Borough appeals process provides inadequate assurances to prevent an aggrieved's petition from being lost, ignored, or blocked; that the process is unconstitutionally vague; and that the procedure is deficient as a general matter.  (Id. ¶¶ 20-21, 23; Doc. 41 at 13.)

---

[8] Plaintiff's second amended complaint does not explicitly state that she is advancing both facial and as applied challenges to § 2-15 of the Borough code, but because Good is proceeding pro se, the court must construe her allegations liberally.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Hartmann v. Carroll, 492 F.3d 478, 482 n.8 (3d Cir. 2007).

Additionally, it is unclear to the court whether Good intended to assert claims concerning any other sections of the Borough code.  If she so intended, her second amended complaint does not provide the specificity required by the pleading standard set forth in Twombly, see Twombly, --- U.S. ---, 127 S. Ct. at 1964-65 (requiring that a complaint contain enough factual matter to place the defendant on notice of the claim asserted), and in Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (requiring that a complaint contain enough factual detail to provide adequate notice of the underlying claim).

A litigant asserting a facial challenge confronts a difficult burden; specifically, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [code provision] would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." Wash. State Grange v. Wash. State Republican Party, --- U.S. ---, 128 S. Ct. 1184, 1190 (2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).  Consequently, if the Borough code provision has any legitimate application, Good's facial challenge must fail.  See id. at 1190-91.

Construing her complaint liberally, it appears that Good's facial challenge arises under the Due Process Clause of the Fourteenth Amendment.  The Due Process Clause offers procedural and substantive protections against deprivations of "life, liberty, or property."  U.S. CONST. amend. XIV, § 1; see also Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 316 (M.D. Pa. 2004).  The threshold inquiry in a due process analysis is whether a plaintiff has been deprived of one of these protected interests.  Pappas, 331 F. Supp. 2d at 316.  Here, Good alleges that the Borough appeals procedure not only deprived her of property without due process of law, but that the ordinance by its nature is apt to deprive any reasonable person of the same.

## i.   **Procedural Due Process**

It is well settled that "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Miller v. City of Phila., 174 F.3d 368, 373 (3d Cir. 1999) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).  A local government "provides constitutionally adequate procedural due process when it provides 'reasonable remedies to rectify a

14

legal error by a local administrative body.'" <u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, No. 3:CV-01-0480, 2006 WL 2460881, at *17 (quoting <u>DeBlasio v. Zoning Bd. of Adjustment</u>, 53 F.3d 592, 597 (3d Cir. 1995)).  Moreover, "when a state affords a 'full judicial mechanism' with which to challenge administrative decisions, . . . regardless of whether the plaintiff avails herself of that appeal mechanism,'" procedural due process is satisfied.  <u>Id.</u> at *17 (quoting <u>Midnight Sessions, Ltd. v. Phila.</u>, 945 F.2d 667, 680 (3d Cir. 1991)).

Under this standard, the facts alleged in Good's facial challenge are plainly inadequate.  Section 2-15 of the Borough Code allows for the appeal of any determination rendered by a Steelton Code Enforcement Officer, as well as affording citizens a means through which to apply for a variance from codes and ordinances.  <u>See</u> CODE § 2-15(B)(1)-(3).  Furthermore, the procedure allows an aggrieved citizen ten days to appeal an adverse decision, a public hearing at which to do so, and for "all persons whose interest may be affected . . . an opportunity to be heard."  <u>Id.</u> § 2-15(D)(1).  Should an appellant be unsatisfied with the results obtained from the Code Hearing Board, the ordinance permits an appeal of final Board decisions to the Pennsylvania state courts.  <u>Id.</u> § 2-15(E).  As a matter of law, the relevant provision of

the Borough code comports with the procedural due process requirements of notice and the opportunity to be heard.[9]

Good also claims that the Borough code provision is unconstitutionally vague. Specifically, she argues that the code provision "permits the code office a wholesale, carte blanche of any sort of demand without specificity or reasonableness."  (Doc. 35 ¶ 23.)  As such, Good alleges that the requirements of the code provision are not clear to a reasonable person.  (Doc. 41 at 6.)  To succeed on a claim that a law is unconstitutionally vague on its face, "the complainant must demonstrate that the law is impermissibly vague in all of its applications."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982).  Moreover, a plaintiff must show that the law fails to "provide explicit standards for those who apply them."  Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  On its face, § 2-15 of the Borough Code clearly satisfies these constitutional requirements.  The provision specifically describes the types of appeals possible, the body to whom the appeals must be made, the manner and time within which an appeal must be lodged, and the record and evidence to which an appellant is entitled.

The court finds that these standards are appropriately specific and, accordingly, Good's facial challenge on procedural due process grounds to § 2-15 of

_____

[9] Additionally, Good's conclusory assertions with respect to a lack of internal checks and balances are misplaced.  Section 2-15 not only allows a citizen to appeal the decisions of Code Enforcement officers to the Code Hearing Board—a separate administrative body—but requires the Board to issue written reports summarizing its decisions.  See § 2-15(E)-(F).

the Borough code must fail.  Leave to amend will be denied as futile.  See Grayson,

293 F.3d at 108 (observing that the district court may exercise its discretion to

dismiss a claim with prejudice when leave to amend would be futile).

### ii.    **Substantive Due Process**

Only those property interests that are considered "fundamental" are

protected by substantive due process principles.  See Savokinas v. Pittston Twp.,

No. 3:06-CV-0121, 2006 WL 2382256, at *3 (M.D. Pa. Aug. 16, 2006) (citing Nicholas v.

Pa. State Univ., 227 F.3d 133, 140 (3d Cir. 2000)).  The use and enjoyment of property

are considered fundamental interests.  See Pellegrino Food Prods. Co., Inc. v. City of

Warren, 116 F. App'x 346, 347 (3d Cir. 2004); see also Spradlin v. Borough of

Danville, No. 4:CV-02-2237, 2005 WL 3320788, at *8 (M.D. Pa. Dec. 7, 2005).  In order

to prevail on a substantive due process claim, the plaintiff must not only

demonstrate that she was deprived of a protected property interest, but also that

this deprivation was arbitrary and capricious.  County Concrete Corp. v. Twp. of

Roxbury, 442 F.3d 159, 165 (3d Cir. 2006).  Additionally, because Good asserts a facial

challenge, she bears the added burden of demonstrating that the Borough appeals

provision, as a whole and in all of its applications, operates in an arbitrary and

capricious manner.  See Wash. State Grange, --- U.S. ---, 128 S. Ct. at 1190.

Good fails to meet her burden with respect to this claim.  As stated above, the

Borough appeals procedure provides an aggrieved citizen a public forum at which to

present her claim, a separate administrative body to adjudicate the matter, as well

as a written decision of any findings and a method by which to appeal to the

17

Pennsylvania state courts.  It can hardly be said that this process is arbitrary or

capricious.  Furthermore, Good does not attempt to establish that this code

provision lacks a reasonable relationship to legitimate government objectives, <u>see</u>

<u>Corneal v. Jackson Twp.</u>, 313 F. Supp. 2d 457, 465-66 (M.D. Pa. 2003), <u>aff'd</u>, 94 F.

App'x 76 (3d Cir. 2004), and, moreover, it is difficult to discern how she could.

Consequently, defendant's motion to dismiss Good's facial challenge on substantive

due process grounds is granted with prejudice and leave to amend is denied as

futile.  <u>See</u> <u>Grayson</u>, 293 F.3d at 108 (observing that the district court may exercise

its discretion to dismiss a claim with prejudice when leave to amend would be

futile).

### b.    <u>As Applied Challenge</u>

Good next asserts that the execution of § 2-15 of the Borough code was

unconstitutional as applied to her.  In general, a facially constitutional municipal

policy may nonetheless provide the basis for § 1983 liability when that policy is

applied in an unconstitutional manner.  <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378,

386-87 (1989) (rejecting municipality's claim that municipal § 1983 liability is only

proper when the underlying policy is unconstitutional on its face).  In order to hold a

municipality liable in such circumstances, however, "rigorous standards of

culpability and causation must be applied to ensure that the municipality is not held

liable solely for the actions of its employee."  <u>Brown</u>, 520 U.S. at 405.  In this vein, it

is well settled that a municipality cannot be held liable under § 1983 "solely on the

operation of *respondeat superior*."  <u>Evancho</u>, 423 F.3d at 353 (quoting <u>Dellarciprete</u>,

18

845 F.2d at 1207).  Rather, a complainant must show either that (1) the individual responsible for the wrongdoing "implements an official policy or practice," Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006), or (2) that a facially lawful municipal policy was enacted with deliberate indifference to its known or obvious unconstitutional consequences.  See Brown, 520 U.S. at 407.

Although Good's claims are not entirely clear, she appears to argue that defendants Trish and Stoner blocked her attempts to file an appeal pursuant to the procedures described in § 2-15 of the Borough code.  Under the applicable legal standard, Good's assertion is clearly inadequate to establish municipal liability. Good does not allege that Trish or Stoner possessed policymaking power, nor does she describe any facts to suggest that the municipality enacted or implemented the policy with deliberate indifference to its known consequences.  Finally, although Good alleges that Heefner had policymaking power, she fails to allege that he used his powers to deprive her of the ability to appeal the Code Enforcement order. Consequently, Good's § 1983 claims against the Borough of Steelton fail to state a claim for relief and must be dismissed.  Furthermore, because the court believes it would be futile to grant further leave to amend with respect to this claim, defendant's motion is granted with prejudice.  See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

### 3.   <u>Due Process Claims Against Trish</u>

Good's allegations make it clear that Trish was personally involved in the Borough's efforts to bring her property into compliance with local ordinances; therefore, the court must consider the merits of Good's due process claims against Trish in his individual capacity.  As the court stated above, the Due Process Clause offers both procedural and substantive protections against deprivations of "life, liberty, or property."  <u>See</u> <u>supra</u> Part II.B.2.a.  Here, Good alleges that Trish deprived her of property—namely, the right to maintain her sidewalk in any condition she desires—without due process of law.  Construing Good's allegation liberally, she asserts both procedural and substantive due process claims, which the court will address *seriatim.*

### a.   <u>Procedural Due Process</u>

As discussed above, procedural due process requirements dictate that "a deprivation of a property interest be 'preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  <u>Gikas v. Wash. Sch. Dist.</u>, 328 F.3d 731, 738 (3d Cir. 2003) (quoting <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985)); <u>see also</u> <u>Miller</u>, 174 F.3d at 373.  Before a plaintiff may successfully assert a procedural due process claim, however, she must take "advantage of the processes that are available to . . . her, unless those processes are unavailable or patently inadequate."  <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000).  Moreover, "[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what [she]

wants." Id. (citing McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995)); see also Sibio v. Borough of Dunmore, No. 3:06-CV-0995, 2007 WL 1173769, at *4 (M.D. Pa. Apr. 18, 2007).

In the action *sub judice*, Good failed to take advantage of the administrative appeals process of which she was advised and that appears in § 2-15 of the Borough code.  Good attributes her failure to appeal to the actions of Trish, which effectively prevented her from availing herself of these procedures and rendered them unavailable in her case.  According to Good, soon after she received the infraction letter from Trish, she contacted the Steelton Code Enforcement Office on two separate occasions.  In both instances, Trish was out of the office and unable to speak with her.  Moreover, Trish failed to respond to Good's inquiries until after the ten day appeals period provided for in § 2-15 had expired.  Therefore, although Good concedes that the Borough *had* an appeals procedure, she argues that Trish's failure to respond to her inquiries made that procedure unavailable to her in this case.

Trish's failure to return Good's calls within the ten day appeals period does not constitute an "unavailable or patently inadequate" procedure, as required under the law.  See Reilly v. City of Atl. City, 532 F.3d 216, 235 (3d Cir. 2008) (describing an appeals procedure as unavailable when it is "absolutely blocked or there is evidence that the procedures are a sham").  Based upon the allegations in her complaint, Good failed to make the efforts required of her before claiming that the § 2-15 procedure was unavailable.  For example, Good does not claim that she attempted contacting any Borough official other than Trish in an effort to pursue her appeal;

21

she never contacted the Borough Code Office as directed in Trish's letter of citation; and there is no evidence that Good made any effort to communicate with the Code Hearing Board prior to the expiration of her appeals period.

In light of these circumstances, this court cannot declare that the § 2-15 appeals procedure provided for in the Borough code was unavailable by virtue of Trish's actions. Accordingly, the motion to dismiss Good's procedural due process claims against Trish will be granted. However, the court will grant Good leave to amend her complaint in order to allege sufficient facts to suggest that the Borough's administrative appeals process was unavailable to her or inadequate to protect her rights.

## b. Substantive Due Process

As stated above, the use and enjoyment of property are fundamental interests protected by substantive due process principles. See Pellegrino Food Prods., 116 F. App'x at 347; see also Spradlin, 2005 WL 3320788, at *8. Furthermore, the court finds that Good's complaint pleads facts supporting a plausible inference that Trish deprived Good of her fundamental interest in the use and enjoyment of her property.

However, even when a plaintiff alleges the deprivation of a fundamental property interest, such deprivation is actionable under substantive due process principles only when the conduct at issue is so irrational as to "shock the conscience." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003) (citing County of Sacramento v. Lewis, 523 U.S. 833, 844-45 (1998)). Substantive due process does not target government actions that are merely

22

taken for an "improper purpose" or in "bad faith."  See id., 316 F.3d at 400-02;

Corneal, 313 F. Supp. 2d at 465-66.  Rather, the doctrine constrains only those

activities that have *no reasonable relation* to legitimate government objectives.

Corneal, 313 F. Supp. 2d at 465-66.  So long as a valid purpose plausibly underlies

the decision, a substantive due process claim will not lie.  See id.  In the land use

context, an official's conduct "shocks the conscience" only where the conduct is the

product of "corruption or self-dealing, bias against an ethnic group, interference

with constitutionally-protected activity or a virtual 'taking' of property."  Prosperi v.

Twp. of Scott, No. 2:06-CV-501, 2006 WL 2583754, at *4 (W.D. Pa. Sept. 7, 2006)

(citing Eichenlaub v. Twp. of Ind., 385 F.3d 274, 285-86 (3d Cir. 2004)).

Despite allowing her the opportunity to amend her complaint in order to

plead with more specificity, Good has failed to allege any facts sufficient to establish

that Trish's conduct involved the type of egregious activity against which

substantive due process principles were intended to guard.  The court simply cannot

conclude that Trish's actions bore *no reasonable relation* to the legitimate

government interest in enforcing local land use ordinances that protect the safety

and welfare of the community.[10]  See Blain v. Twp. of Radnor, No. 02-CV-6684, 2004

WL 1151727, at *6 (E.D. Pa. May 21, 2004) (discussing a local government's

_____

[10] Good claims that Trish began harassing and spying on her around the time
that she originally filed her complaint, in September of 2006.  (Doc. 35 ¶ 10.)
Although it is unclear to the court what Good is intending to assert by including
these allegations, the court has previously ruled that any state law tort claims
against Trish must be raised in Pennsylvania state court.  (See Doc. 51.)

"legitimate interest in land use planning"); see also Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 596 (3d Cir. 1998) (same).  Good implies that Trish's selection of her property was in bad faith; even so, this allegation fails to establish a valid substantive due process claim.  See Corneal, 313 F. Supp. 2d at 466 ("[E]ven allegations of bad faith enforcement of an invalid zoning ordinance do not, without more, state a substantive due process claim."); see also Eichenlaub, 358 F.3d at 286 (dismissing substantive due process claim where zoning officials applied subdivision requirements to plaintiff's property but not to other properties).  Accordingly, the court will grant with prejudice the motion to dismiss Good's substantive due process claim against Trish, finding that any attempt to amend this particular claim will be futile.  See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

## III.   Leave to Supplement Pleadings to Include Fourth Amendment Claims

### A.   Legal Standard

Federal Rule of Civil Procedure 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.

FED. R. CIV. P. 15(d).  Rule 15(d) is intended to facilitate "as complete an adjudication of the dispute between the parties as is possible."  6A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1504, at 177 (2d ed. 1990).  Under this rule,

litigants may assert new claims, which arose subsequent to the original complaint, although the court retains discretion to deny a request for supplementation when the proffered claims are unrelated to the original cause of action.  See Albanian Associated Fund v. Twp. of Wayne, Civ. A. No. 06-CV-3217, 2007 WL 4232966, at *1 (D.N.J. 2007); see also Berger v. Edgewater Steel Co., 911 F.2d 911, 924 (3d Cir. 1990) (rejecting leave to supplement when new claims would require additional, extensive discovery).

This court has stated that the following factors should be considered when entertaining a Rule 15(d) motion: the extent to which supplementation will promote a justiciable disposition of the case; inconvenience to the plaintiff in disallowing supplementation; and the extent to which supplementation will prejudice either party.  See Brown v. Lindsay, No. 4:CV-07-1299, 2008 WL 3874308, at *1 (M.D. Pa. Aug. 14, 2008).  The district court may deny supplementation when doing so would be futile.  See Forman v. Davis, 371 U.S. 178, 182 (1962); see also Young v. Beard, No. 06-160, 2007 WL 1799641, at *2 (W.D. Pa. June 30, 2008).

### B.   Discussion

Good alleges that she has suffered infringements of her Fourth Amendment rights.  The Fourth Amendment bars "unreasonable searches and seizures," U.S. Const. amend. IV, and "guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction."  Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 613-14 (1989).  Furthermore, unlawful search claims require proof of an

unconstitutional invasion of a plaintiff's "reasonable expectation of privacy" or a deprivation of his or her interest in property.  See Soldal v. Cook County, 506 U.S. 56, 62-64 (1992); Rakas v. Illinois, 439 U.S. 128, 133-35 (1978) (citing Alderman v. United States, 394 U.S. 165, 174 (1969)).

In the action *sub judice*, Good seeks leave to supplement her complaint with allegations of two separate Fourth Amendment violations.  Additionally, Good seeks to attack the facial validity of the Borough of Steelton's policy allowing code inspections of rental units.  The court will discuss each alleged violation in turn.

### 1.   Fourth Amendment Claim Against Trish

Good seeks leave to supplement her complaint with an allegation that Trish, in his individual capacity, improperly photographed Good's daughter and three grandchildren.  According to the facts averred in Good's request (See Doc. 53), the incident occurred in public areas in Steelton Borough.  Thus, assuming *arguendo* that Good has standing to assert this cause of action on behalf of her granddaughters, the claim fails to allege that Trish violated any individual's reasonable expectation of privacy.

The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."  Minnesota v. Olson, 495 U.S. 91, 95 (1990) (quoting Rakas, 439 U.S. at 143).  With respect to public places, the law is clear: "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."  Katz v. United States, 389 U.S. 347, 351 (1967); see

26

also <u>Kowalski v. Scott</u>, No. 02-7197, 2004 WL 1240658, at *4 (E.D. Pa. May 26, 2004),

<u>aff'd</u>, 126 F. App'x 558 (3d Cir. 2005) (rejecting § 1983 claims when government

conducted video surveillance of plaintiff in public areas).  Because there is no

reasonable expectation of privacy in a public place, even if the alleged

photographing incident is true, it does not amount to a constitutional violation.  As

such, the court denies Good's leave to supplement her complaint in order to assert

this claim, finding that any attempt to do so will be futile.

<strong>2.      <u>Fourth Amendment Claims Relating to Apartment Search</u></strong>

Good proposes two additional claims arising from Stoner's alleged entry and

search of her apartment on April 15, 2008.  First, Good argues that Stoner's entry,

pursuant to Borough ordinance, constitutes a violation of her Fourth Amendment

rights.  Second, Good argues that the Borough ordinance is unconstitutional on its

face.

Exercising its discretion under Rule 15(d), the court finds that

supplementation will not serve the interests of judicial economy.  <u>See</u> <u>Hassoun v.</u>

<u>Cimmino</u>, 126 F. Supp. 2d 353, 360 (D.N.J. 2000) (finding that the purpose of Rule

15(d) is to serve the interests of judicial economy); <u>see also</u> <u>Robinson v. Shannon</u>,

No. Civ. 3:CV-04-2777, 2005 WL 2416116, at *2 (M.D. Pa. Sept. 30, 2005) (refusing

leave to supplement when plaintiff attempted to add new claims that were

unconnected to those raised in the original complaint).  Good's proposed claim is

completely unrelated to the enforcement of the Borough sidewalk ordinance.  The

underlying events occurred in an unrelated apartment and were perpetrated by

27

several individuals, some of whom have no prior connection to this § 1983 litigation.

These allegations are more properly pursued in a separate cause of action.  <u>See</u>

<u>Robinson</u>, 2005 WL 2416116, at *2 (requiring plaintiff to file new complaint, as

opposed to supplementation, when proposed claims raised new, wholly distinct civil

rights claims).  Accordingly, Good's motion for leave to supplement her complaint

with respect to this claim will be denied.

**IV.**    **<u>Conclusion</u>**

For the foregoing reasons, the court will grant defendants' motion to dismiss

(Doc. 36).  Additionally, the court will deny plaintiff's motion for leave to supplement

her second amended complaint (Doc. 52).

An appropriate order will issue.

<u> S/ Christopher C. Conner   </u>
CHRISTOPHER C. CONNER
United States District Judge

Dated:  September 30, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SANDRA L. GOOD,** | : | **CIVIL ACTION NO. 1:06-CV-1736** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF STEELTON,** | : | |
| **DENNIS C. HEEFNER,** | : | |
| **SYLVIA STONER, JOHN TRISH**, | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 30th day of September, 2008, upon consideration of the

defendants' motion to dismiss (Doc. 36) plaintiff's second amended complaint (Doc.

35), and of the plaintiff's motion for leave to supplement her second amended

complaint (Doc. 53), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.   The motion to dismiss (Doc. 36) is GRANTED.  All claims against
     defendants the Borough of Steelton, Dennis C. Heefner, Sylvia Stoner,
     and John Trish are DISMISSED.

2.   The motion for leave to supplement the second amended complaint
     (Doc. 56) is DENIED.

3.   Plaintiff shall be permitted to file, on or before October 30, 2008, a third
     amended complaint that alleges one or more of the following:

     a.   Personal involvement on the part of defendants Heefner and
          Stoner;

     b.   Sufficient facts to suggest that Trish engaged in conduct that
          rendered the Borough appeals procedure unavailable or patently
          inadequate.  See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

4.      Aside from the third amended complaint, no further amendments to plaintiff's complaint will be permitted absent a showing of compelling circumstances.


                                         S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge